**ECODYNE CORPORATION**

v.

**CROLL–REYNOLDS ENGINEERING CO., INC.**

**Civ. No. B–78–180.**

United States District Court, D. Connecticut.

Dec. 28, 1979.

Dion W. Moore, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., Roy E. Hofer, and David A. Anderson, Hume, Clement, Brinks, Willian & Olds, Ltd., Chicago, Ill., for plaintiff.

Thomas F. Parker, Gross, Hyde & Williams, Hartford, Conn., John D. Foley, David H. Pfeffer, and Bartholomew Verdirame, Morgan, Finnegan, Pine, Foley & Lee, New York City, for defendant.

## MEMORANDUM OF DECISION

ELLEN B. BURNS, District Judge.

Plaintiff Ecodyne Corporation seeks a declaratory judgment that the defendant

Croll-Reynolds Engineering Company's installation of a condensate polishing apparatus in accordance with defendant's contract with Iowa Southern Utilities Co. will infringe two of plaintiff's patents. Plaintiff further seeks a permanent injunction against infringement, contributory infringement or inducement to infringe and an award of damages, costs and attorneys' fees. Defendant Croll-Reynolds has moved for a dismissal for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. Rule 12(b)(1). In the alternative, defendant requests dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## COUNT I

### DECLARATORY JUDGMENT

■ The Declaratory Judgments Act, 28 U.S.C. § 2201, provides for a remedy "in a case of actual controversy." Absent such a controversy, there is no subject matter jurisdiction. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–241, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1936). *See also Evers v. Dwyer*, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958).

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.* at 203, 79 S.Ct. at 179.

In the present case, plaintiff has alleged that the "condensate polishing apparatus, when installed and operating, *will* infringe . . ." and that "[d]efendant's installation of such apparatus *will* constitute direct and contributory infringement . . . and *will* constitute inducement to infringe . . ." (Count I, ¶ 6, Complaint; emphasis added).

■ Nowhere in Count I does plaintiff allege that there is a present infringement of its patents. Rather plaintiff asks only for a declaration that defendant's actions *will* constitute infringement. The require-

ment of immediacy, of a present case, is lacking here.

As the court stated in *Swedlow, Inc. v. Rohm & Haas Co.*, 455 F.2d 884, 885 (9th Cir. 1974):

> In reality this complaint seeks an advisory opinion that if and when defendant completes the plant now under construction, assuming there are no material changes in the intervening period, the present acts of the defendant not only threaten, but in fact constitute an infringement of plaintiff's patents.

*See also Pullman, Inc. v. W.R. Grace & Co.*, 437 F.Supp. 1062, 1066 (W.D.Okl.1976).

Similarly, in the present action, installation of the apparatus has not been accomplished and plaintiff's claim is that, when installed and operating, the apparatus will infringe. At that time, however, if plaintiff believes infringement exists, it will have an adequate remedy at law in a conventional patent infringement action. *See Marine Electric Corp. v. Vapor Corp.*, No. 78C 1947 (N.D.Ill. Feb. 2, 1979); *Swedlow, Inc. v. Rohm & Haas Co., supra*, at 885–886.

> The court sees no compelling reason why the Declaratory Judgments Act, which provides the court with a discretionary procedural remedy, should be used to give a patent owner broader substantive rights than are available under the Patent Statutes.

For all of the reasons stated above, Count I is dismissed for lack of jurisdiction.

## COUNT II

### PATENT INFRINGEMENT

■ Plaintiff brings Count II of its complaint under the United States patent laws. In order for the court to rule in this or in any case, it must have jurisdiction; there must be before it a justiciable case or controversy, brought by a person who has standing to bring it, when it is ripe for decision.

The question to be answered regarding standing is whether the party seeking relief has alleged a sufficiently personal stake in the outcome to assure concrete adverseness.

*Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). "[T]he concept of standing focuses on the party seeking relief, rather than on the precise nature of the relief sought." *Jenkins v. McKeithen*, 395 U.S. 411, 423, 89 S.Ct. 1843, 1850, 23 L.Ed.2d 404 (1969).

The plaintiff in the present action appears to have just such a "personal stake." As the owner of the two patents at issue here, plaintiff clearly has an interest in protecting its rights to those patents. Thus, plaintiff meets the second part of the requirement to bring an action; it has the requisite standing.

Of course, standing alone is not sufficient; the court must have jurisdiction conferred upon it by some statutory provision. Here, plaintiff alleges that jurisdiction is present pursuant to 28 U.S.C. § 1338(a). Its argument in favor of jurisdiction is that "[d]efendant's contract of sale with Iowa Southern as alleged in paragraph 5 hereof constitutes a sale . . . ." (Complaint, ¶ 11); the sale of an allegedly infringing item is an alleged infringement according to 35 U.S.C. § 271(a); and 28 U.S.C. § 1338 gives the district courts original jurisdiction over patent infringement actions.

The crux of this claim is the assertion that a contract of sale constitutes a sale. This is a legal conclusion, and the court believes that in the infringement context, at least, it is incorrect.

At common law, the term "sale" was variously defined. Blackstone termed it "a transmutation of property from one man to another in consideration of some price." 2.Bl. 446. In Benjamin on Sales § 1 the following are listed as elements of a sale: (1) parties competent to contract; (2) mutual assent; (3) a thing, the absolute or general property in which is transferred from the seller to the buyer, and (4) a price in money, paid or promised. "If any one of the ingredients be wanting, there is no sale." Atkinson on Sales, 5. *See generally Butler v. Thomson*, 92 U.S. (2 Otto) 412, 414–15, 23 L.Ed. 684 (1875). It is well understood that delivery of the property is one of the elements of a sale, *Norfolk and Western Ry. Co. v. Sims*, 191 U.S. 441, 447, 24 S.Ct. 151, 152, 48 L.Ed. 254 (1903), and "the transfer of the property in the thing is effected by the transfer of the thing itself to the purchaser." *Stephens v. Gifford*, 137 Pa. 219, 20 A. 542, 543 (1890). In sum, a sale is an executed contract, to constitute which delivery in fact or in law is indispensable, and it cannot be given of a thing which has not fully come into existence. *Clemens v. Davis*, 7 Pa. (7 Barr) 263, 264 (1847); *see also Pabst Brewing Co. v. Commonwealth*, 32 Ky.Law Rep. 1010, 107 S.W. 728, 729 (Ky.App.1908). As the Supreme Court of Rhode Island expressed it, " 'sale' is a word of precise legal import that connotes the formation of a contract under which the seller, in consideration of payment or the promise of payment, transfers to the buyer title and possession to property [citing to *Butler, supra*]. Under this definition, a sale is evidenced by the formation of a contract and by an exchange in rights to property." *State v. Eckert*, R.I., 389 A.2d 1234, 1240 (1978).

Clearly, then, by whatever definition, possession of the thing itself, or the immediate right to its possession (obtained for instance, by negotiation of a warehouse receipt or a bill of lading) is a necessary component of a "delivery", which is itself a necessary component of a sale. When the thing in question is an apparatus and the issue is patent infringement by sale, partial delivery will not suffice; in order for there to have been a sale within the meaning of 35 U.S.C. § 271(a), the entire apparatus must have been constructed and ready for use. Until the apparatus is constructed and ready for use, it cannot be clear whether infringement has taken place. Indeed, defendant may breach its contract and produce something entirely different or nothing at all. In that event, infringement will never have taken place.

Then, too, the specifications of the contract may be met in a way which does not infringe plaintiff's patents. Only when the apparatus is operated will the question of infringement be able to be answered conclusively.

■ The court is unwilling to adjudicate such speculative matters and finds that on the face of the complaint, there has been no sale of an allegedly infringing item.

Thus this action is premature and jurisdiction is lacking.

The prematurity of this action becomes even clearer if the patents themselves are treated as incorporated into the complaint by the reference to them in paragraph 5. Each of the claims of each of the patents requires the application of anion and cation exchange resins to a filtering device. These resins would not be applied by Croll-Reynolds in contruction of the apparatus. At most, Croll-Reynolds would provide an apparatus capable of receiving the resins mentioned in the claims. The actual application of the resins, which would be necessary to infringe any claim of either patent, will only be done, if at all, by Iowa Southern in the day-to-day operation of the apparatus.

As pointed out above, it is impossible at this time to determine whether Croll-Reynolds will even adhere to its contract, much less whether Iowa Southern will infringe the patents by application of the claimed resins and thus make Croll-Reynolds liable as a contributory infringer.

■ Where there has been no sale of an allegedly infringing item, there is no jurisdiction under the patent laws to hear this suit for infringement. Where the matter of infringement is so speculative as to be incapable of determination at this time, that lack of ripeness alone would be an insuperable obstacle to the exercise of jurisdiction, even if jurisdiction were otherwise present. *See Socialist Party v. Gilligan*, 406 U.S. 583, 588, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972); *United Public Workers v. Mitchell*, 330 U.S. 75, 90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947).

Finally it must be noted that plaintiff will not be foreclosed from a forum at such time, if any, as it becomes clear that defendant has infringed plaintiff's patents. The remedy at that time, as noted above, will lie in a conventional patent infringement action.

In its memorandum, plaintiff claims that "[t]his litigation involves a public utility,

Iowa Southern. Plaintiff seeks an injunction against the infringement of its patents. If litigation is delayed until after completion of the power plant, this Court would be understandably reluctant to grant an injunction that would shut it down." (Memorandum in Opposition to Motion to Dismiss, pp. 5–6). But the court notes that, even were this so, plaintiff is not, and will not be, limited to injunctive relief in a patent infringement suit. 35 U.S.C. § 284 provides for an award of damages "adequate to compensate for the infringement . . ." in all cases in which infringement is found to have taken place. If the infringing conduct does not cease, either a permanent award of damages or, possibly, a compulsory licensing scheme may be appropriate. This Court feels confident that plaintiff will not be left without remedy.

On the facts of the case as currently before the court, then, the court finds it lacks jurisdiction over any claim of patent infringement and furthermore that no justiciable controversy exists. The motion to dismiss Counts I and II is therefore granted.

SO ORDERED.