**AB VOLVO, Plaintiff,**

v.

**EATON–KENWAY, INC., Defendant.**

Civ. A. No. C 83–3814.

United States District Court,
N.D. Ohio, E.D.

March 7, 1984.

---

**580**

Charles R. Rust, Cleveland, Ohio, for plaintiff.

Eben G. Crawford, James L. Wamsley, III, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

AB Volvo ("Volvo") brings this declaratory judgment and patent infringement action, alleging that Eaton-Kenway, Inc. ("Eaton-Kenway") is constructing an automobile assembly system that infringes a Volvo patent. Eaton-Kenway moves to dismiss under Fed.R.Civ.P. 12(b)(1) and (6) on the grounds that the complaint presents neither an "actual controversy" meriting a declaratory judgment nor a justiciable patent infringement dispute. Volvo contends that a justiciable controversy does exist and that dismissal would stall resolution of the patent dispute while potential damages grow. Upon consideration of the pleadings, affidavits, and the tangled body of case law in this area, the complaint is dismissed.[1]

Jurisdiction is invoked under 28 U.S.C. §§ 1331, 1332, 1338, 2201 and 2202.

### I.

Volvo is a Swedish corporation with a place of business at Goteberg, Sweden. Eaton-Kenway is an Ohio corporation with a place of business in Cleveland. Volvo owns U.S. Patent 3,968,559, duly issued on July 13, 1976 and entitled "Method and Arrangement for Assembly of Component Parts, Preferably for Motor Vehicles" ("Volvo Patent"). The patent abstract describes it as:

A method of assembling individual units of automobiles in an assembly line in which each unit or parts of the unit are transported on individual motor-driven transport cars, the movement of the cars being individually controlled by signals from control wires connected with a control center and running in the direction of the line. The invention also comprises an apparatus as well as a transport car to be used in said method.

Through its Autocarrier Systems Division, and pursuant to the patent, Volvo designs, manufactures, markets and installs "custom designed manufacturing systems using flexibly controlled automatic guided carrier vehicles known as 'autocarriers' as a replacement for the conventional production line." Complaint ¶ 4, at 2.

The complaint, filed on September 22, 1983, alleges that:

7. Eaton-Kenway has entered and is now also engaged in the business of manufacturing, marketing and installing manufacturing facilities using autocarrier systems, and in furtherance of such business has embarked on a concerted effort to manufacture, market and install systems which infringe the Volvo patent.

Count I seeks a declaratory judgment and injunction halting Eaton-Kenway's "threatened infringement". It states in pertinent part:

8. As part of [its] ... infringing effort, Eaton-Kenway has:

(a) Advertised, promoted and offered to sell autocarrier systems, and equipment designed for use in autocarrier systems, which infringe the Volvo Patent;

---

1. Since matters outside the pleadings have been presented to and considered by the Court, the Motion to Dismiss shall be treated as one for summary judgment under the standards of Fed. R.Civ.P. 56(c). *See* Fed.R.Civ.P. 12(b).

(b) Printed and distributed brochures and sales literature describing and depicting autocarrier systems, and equipment designed for use in autocarrier systems, which infringe the Volvo Patent;

(c) Solicited and bid on contracts to manufacture and install autocarrier systems, and equipment designed for use in autocarrier systems, which infringe the Volvo Patent.

9. The aforesaid threats to infringe Volvo's patent rights became even more imminent when Eaton-Kenway entered into a contract with the Oldsmobile Division of General Motors Corporation to manufacture and install autocarrier systems which infringe the Volvo Patent at the Oldsmobile Assembly Plant in Lansing, Michigan (the "Oldsmobile Contract"). Both Volvo and Eaton-Kenway bid on the Oldsmobile Contract, but the contract was awarded to Eaton-Kenway in derogation of Volvo's rights under the Volvo Patent. Upon information and belief, Eaton-Kenway agreed in the Oldsmobile Contract to indemnify and hold Oldsmobile harmless from any and all claims of patent infringement arising from the contract.

Count II of the complaint charges Eaton-Kenway with patent infringement, contributory infringement, and inducement to infringe. The pertinent paragraphs state:

16. Upon information and belief, Eaton-Kenway has already commenced actual infringement of the Volvo Patent in at least the following ways:

(a) By manufacturing equipment under the Oldsmobile Contract which is designed for use in autocarrier systems which infringe the Volvo Patent;

(b) By delivering equipment under the Oldsmobile Contract which is designed for use in autocarrier systems which infringe the Volvo Patent;

(c) By installing equipment under the Oldsmobile Contract which is designed for use in autocarrier systems which infringe the Volvo Patent;

(d) By teaching and instructing Oldsmobile personnel how to use Eaton-Kenway equipment in a manner which infringes the Volvo Patent.

17. The foregoing acts of Eaton-Kenway constitute willful infringement, contributory infringement and inducement to infringe the Volvo Patent, for which Volvo has no adequate remedy at law.

Exhibits and affidavits submitted by the parties provide a somewhat clearer picture of Eaton-Kenway's Oldsmobile project. On February 7, 1983, Oldsmobile requested quotations for automated guided vehicle systems for its Lansing plant. The request—which asked that quotations be submitted by March 4, 1983—contained twenty-five pages of detailed specifications.

On or about April 11, 1983 and August 25, 1983, Oldsmobile issued purchase orders to Eaton for the installation of several automatic guidance systems. In small print, each purchase order stated in part:

6. CANCELLATION: Buyer reserves the right to cancel all or any part of the work covered by this order if Seller does not make deliveries as specified in the schedules or fails to make progress as to endanger performance of the work and does not correct such failure within 10 days after receipt of written notice from Buyer specifying such failure, or if Seller breaches any of the terms hereof including the warranties of the Seller.

\* \* \* \* \* \*

8. SPECIFICATION CHANGES: Buyer reserves the right at any time to make changes in drawings and specifications as to any materials and/or work covered by this order. Any difference in price or time for performance resulting from such changes shall be equitably adjusted and the order and/or schedule shall be modified in writing accordingly.

Eaton submits several affidavits providing additional information on the Oldsmobile project. Stephen Spencer, Eaton's project manager, stated on November 9, 1983 that Eaton had not completed the engineering, manufacture, delivery or in-

stallation of equipment for the automatic guided vehicle systems, and would not complete the systems for at least eight months (or roughly until July of 1984). An Eaton vice president, Lew Neilsen, states that Eaton has designed, manufactured, and installed automatic vehicle guidance systems for several years, and that a number of those systems had been cancelled, modified, or delayed between the original order and the projected completion date.

## II.

### A. *Declaratory Judgment*

The Declaratory Judgment Act, 28 U.S.C. § 2201, states in part:

In a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

■ To satisfy the requirements of Article III and create federal subject matter jurisdiction, a declaratory judgment action must involve a justiciable controversy. "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of specific character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). The Supreme Court has reaffirmed repeatedly "that the Declaratory Judgment Act was intended to affect only the remedies available in a federal district court, not the court's jurisdiction ..." *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for South Califor-*

nia, — U.S. —, —, 103 S.Ct. 2841, 2850, 77 L.Ed.2d 420 (1983), citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

Declaratory judgment patent cases are most commonly brought by potential infringers against patentee-defendants. *See* 6A J. Moore, *Moore's Federal Practice* ¶ 57.20 (1983). Actions like this one are a more recent phenomenon, and have been permitted only in limited circumstances:

... [A] substantial body of case authority has sustained the proposition that federal district courts may entertain an action brought by a *patentee* for a declaratory judgment that his patent is valid and will be infringed by the defendant *in the future* (assuming, of course, that the defendant's intended future conduct is sufficiently concrete and definite—and that the threat of the alleged future infringement is sufficiently immediate and real—that there is an actual controversy).

*Ninth Annual Judicial Conference of the United States Court of Customs and Patent Appeals*, 94 F.R.D. 350, 408 (1982) (statement of Jack C. Goldstein, Esq.) (emphasis in original).

■ Volvo's action does not satisfy those requirements. Count I of the complaint seeks relief because "Eaton-Kenway will continue its threatened infringement of the Volvo Patent unless enjoined by this Court." Complaint ¶ 14, at 4. Count I does not allege any present infringement of the Volvo Patent. It seeks a declaration that, when completed, the autocarrier system will infringe the Volvo Patent. This Court does not believe this controversy is definite, concrete, or real and substantial rather than hypothetical.[2]

In reality this complaint seeks an advisory opinion that if and when defendant completed the plant now under construction, assuming there are no material

---

**2.** District courts possess considerable discretion in deciding whether to allow a declaratory judgment action to go forward. Even if this complaint did present an actual controversy, "the mere fact that justiciability is present does not mean that the court must proceed with the declaratory action, for it is well settled that the exercise of declaratory jurisdiction is discretionary. If the court be of the opinion that the action will not serve a useful purpose, or that it is otherwise undesireable, then it should refuse to proceed." 6A J. Moore, *supra,* ¶ 57.20.

changes in the intervening period, the present acts of the defendant not only threaten, but in fact constitute an infringement of plaintiff's patents. The court sees no compelling reason why the Declaratory Judgment [ ] Act, which provides the court with a discretionary procedural remedy, should be used to give a patent owner broader substantive rights than are available under the Patent Statutes.

*Swedlow, Inc. v. Rohm & Haas, Company,* 455 F.2d 884, 885–86 (9th Cir.1972) (quoting opinion of district court).

The Eaton-Kenway autocarrier system will not be complete for at least four more months. The system is subject to modification or cancellation at any time prior to completion. "It would appear that the purported controversy would not constitute reality until such time as the process is in operation and an actual determination can be made whether the Patent in question is infringed by same." *Pullman, Inc. v. W.R. Grace & Co.,* 437 F.Supp. 1062, 1066 (W.D.Okl.1976). Once the system is complete, "if plaintiff believes infringement exists, it will have an adequate remedy at law in a conventional patent infringement action." *Ecodyne Corp. v. Croll-Reynolds Engineering Co.,* 491 F.Supp. 194, 196 (D.Conn.1979).

In both *Pullman* and *Ecodyne,* patentee plaintiffs sought declaratory judgments that the systems defendants intended to employ in uncompleted plants would infringe their process patents. The opinions dismissing those suits are more relevant to this action than *Automation Systems, Inc. v. Intel Corp.,* 501 F.Supp. 345 (S.D.Iowa 1980), the principal case relied upon by Volvo. There the district court denied a motion to dismiss a declaratory judgment action which sought to enjoin marketing of defendant's allegedly infringing microcomputer chip. The court distinguished *Pullman* because the plaintiff's allegations

... that sales literature describing the product in question has been widely distributed, that samples will soon be available and orders will soon be solicited, and that the product will be available early in the upcoming year ... illustrate that the product in question is sufficiently near production and marketing so as to represent an immediate threat to Automation's interest in its patent ... [and] indicate that there exists a controversy of "sufficient immediacy and reality" to justify ... consideration of plaintiff's request for declaratory judgment.

*Id.* at 348.

But *Automation Systems* resembles this case much less than it resembles the declaratory judgment cases that were themselves distinguished in *Swedlow,* cases in which "an existing controversy had been manifested by specific acts of alleged infringement or an immediate capability and intent to produce an allegedly infringing item." 455 F.2d at 886. Count I alleges no specific acts of alleged infringement, and Eaton-Kenway has no *immediate* capacity to infringe the Volvo Patent.

Count I of the complaint is dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

B. *Patent Infringement, Contributory Infringement, and Inducement to Infringe*

Count II of the complaint is brought under 35 U.S.C. § 271, which provides:

(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use,

shall be liable as a contributory infringer.

Eaton-Kenway argues that no infringement could possibly take place until the autocarrier system is complete and in operation. Volvo's brief responding to the motion to dismiss discusses only the issue of threatened infringement, not present actual infringement. While not treating Volvo's omission as a concession of the point, this Court agrees with Eaton-Kenway that Count II states no justiciable controversy, and adopts Judge Burns' lucid discussion of the same issue in *Ecodyne:*

> ... When the thing in question is an apparatus and the issue is patent infringement by sale, partial delivery will not suffice; in order for there to have been a sale within the meaning of 35 U.S.C. § 271(a), the entire apparatus must have been constructed and ready for use. Until the apparatus is constructed and ready for use, it cannot be clear whether infringement has taken place. Indeed, defendant may breach its contract and produce something entirely different or nothing at all. In that event, infringement will never have taken place.
>
> Then, too, the specifications of the contract may be met in a way which does not infringe plaintiff's patents. Only when the apparatus is operated will the question of infringement be able to be answered conclusively.
>
> The court is unwilling to adjudicate such speculative matters and finds that on the face of the complaint, there has been no sale of an allegedly infringing item.

491 F.Supp. at 197–98. At the time this action was commenced, there had been no patent infringement, no inducement, and no contributory infringement.

Count II of the complaint is therefore dismissed. The Court notes that Volvo is not foreclosed from bringing another action at such time as it becomes clear that Eaton-Kenway has actually infringed its patent.

IT IS SO ORDERED.