**JOY TECHNOLOGIES, INC.,**
**Plaintiff–Appellee,**

and

**A/S Niro Atomizer, Involuntary Plaintiff,**

v.

**FLAKT, INC., Defendant–Appellant.**

**No. 92–1405.**

United States Court of Appeals,
Federal Circuit.

Oct. 6, 1993.

James Galbraith, Kenyon & Kenyon, New York City, argued for appellant. With him on the brief were Paul Lempel, Lynne Darcy and Donna M. Praiss.

Robert A. Schroeder, Pretty, Schroeder, Brueggemann & Clark, Los Angeles, CA,

argued for appellee. With him on the brief was Edward G. Poplawski.

Before NIES, Chief Judge, BENNETT, Senior Circuit Judge, and ARCHER, Circuit Judge.

NIES, Chief Judge.

Flakt, Inc., brings an interlocutory appeal for review of the scope of an injunction entered by the United States District Court for the District of Delaware dated May 29, 1992, in Civil Action No. 89–533–JJF, brought by Joy Technologies, Inc., for infringement of U.S. Patent No. 4,279,873 (the '873 patent). This court stayed the injunction pending issuance of this decision. The stay of the injunction is vacated. The injunction is vacated and this aspect of the case is remanded to the district court with instructions to issue an injunction of a scope which conforms to this decision.

I.

## BACKGROUND

Judgment was entered by the district court against Flakt for infringement of various claims of the '873 patent. All of the claims in the '873 patent are method claims directed to an improved process for desulfurizing flue gas produced from the combustion of fuels which contain sulfur, such as coal. The particular method claimed in the '873 patent includes the partial recycle of calcium hydroxide used in the desulfurization process. Both Joy and Flakt are in the business of designing and building flue gas desulfurization (FGD) plants throughout the United States for use in conjunction with industrial plants, such as power plants for production of electricity.[1]

In response to Joy's post-trial motion, the district court entered an order which states in its entirety, "[F]or the reasons set forth in the Memorandum Opinion issued this date

---

1. We are unable to determine from the partial record presented in this appeal whether or not there was evidence that Flakt itself practiced the method, e.g., by testing the facilities. The jury affirmatively answered interrogatories that "Flakt systems" infringed literally and under the doctrine of equivalents. What entity practiced the patented method is not evident from this ambivalent question. Under other interrogatories, Flakt was specifically found to have engaged in contributory infringement and inducement of infringement.

[May 29, 1992], IT IS HEREBY ORDERED that [Joy's] Motion for Permanent Injunction is GRANTED as detailed in the Memorandum Opinion." In the May 29, 1992, memorandum opinion, the district court discussed enjoining Flakt from further direct infringement, contributory infringement and inducement of infringement and spelled out that this meant Flakt was precluded from entering into any contracts during the term of the '873 patent for the sale or construction of any air pollution control system designed to carry out the patented process. The sole issue respecting the scope of the injunction was framed by the district court as follows:

> The critical question is whether sale and production of a machine/system capable of carrying out the patented process which requires five years to construct is considered contributory infringement *when there will be no direct infringement, i.e. use of the machine/system, within the patent term.*

(Emphasis added.)

## II.

### FORM OF THE INJUNCTION

The injunction issued by the district court does not conform to Fed.R.Civ.P. 65(d) (1993) [2] in that the order granting the injunction and the prohibitions set out in the memorandum opinion are not in a single document. While the parties address the form of the injunction only peripherally, this defect would require vacating and remanding the injunctive order for compliance as to form and specificity. *Additive Controls and Measurement Sys. v. Flowdata, Inc.,* 986 F.2d 476, 25 USPQ2d 1798 (Fed.Cir.1993). It is, however, evident that the district court intended to and, the parties agree, did enjoin Flakt from bidding or entering contracts or building a plant which will not be capable of carrying out the desulfurization/recycle process of the '873 patent until after the patent expires on July 21, 1998. This prohibition is the main issue of the appeal.

## III.

### STANDARD OF REVIEW

While the right to exclude is the essence of the concept of property,[3] district courts are, nevertheless, given broad discretion under 35 U.S.C. § 283 (1988)[4] to determine whether the facts of a case warrant the grant of an injunction and to determine the scope of the injunction. *Ortho Pharmaceutical Corp. v. Smith,* 959 F.2d 936, 945, 22 USPQ2d 1119, 1127 (Fed.Cir.1992). Accordingly, we review a district court's decision to grant an injunction and the scope of that injunction for abuse of discretion. *Id.* An abuse of discretion may be established by showing that the district court either made a clear error of judgment in weighing relevant factors, or exercised its discretion based on an error of law or on findings which were clearly erroneous. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1039, 22 USPQ2d 1321, 1333 (Fed.Cir.1992); *Seattle Box Co. v. Industrial Crating & Packing Inc.,* 756 F.2d 1574, 1581, 225 USPQ 357, 363 (Fed.Cir.1985).

In addition to committing the grant of an injunction to a district court's discretion, section 283 requires that the purpose behind the injunction must be "to prevent the violation of any right secured by patent." 35 U.S.C. § 283. *See also Eli Lilly and Co. v. Medtronic, Inc.,* 915 F.2d 670, 674, 16 USPQ2d 2020, 2024 (Fed.Cir.1990) ("[A]n injunction is only proper to the extent it is 'to

---

2. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed.R.Civ.P. 65(d) (1993).

3. *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1247, 9 USPQ2d 1913, 1929 (Fed.Cir.1989).

4. 35 U.S.C. § 283 provides, "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

prevent the violation of any right secured by patent.'"). An injunction for infringement may not be punitive. *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1549, 3 USPQ2d 1412, 1420 (Fed.Cir.1987) ("Punishment is not the purpose of an injunction....").

On appeal, Flakt argues that the injunction enjoins Flakt from performing acts which do not violate Joy's rights secured by the '873 patent. Joy responds that the broad scope of the injunction is necessary to protect it from infringement by Flakt and threatened infringement by others. Joy further argues that "duplicitous" conduct by Flakt provided the district court with justification for granting a broad injunction.

## IV.

### SCOPE OF INJUNCTION

#### A.

*Sales by Flakt of Equipment Do Not Constitute Direct Infringement of the Method Patent*

■ A utility patent grants to the patentee the right to exclude others from making, using, or selling the patented invention throughout the United States for the seventeen year term of the patent. 35 U.S.C. § 154 (1988). Notwithstanding various defenses to patent infringement which are not applicable to the present appeal, "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (1988). The making, using, or selling of a patented invention is the usual meaning of the expression "direct infringement" and will be used herein in that sense. *See Hewlett–Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1469, 15 USPQ2d 1525, 1528 (Fed. Cir.), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990).[5]

■ Joy argues that the making or selling of an industrial plant designed to enable use of the patented FGD system may constitute a sale of the process claimed in the '873 patent within the meaning of section 271(a), particularly where a contract contains engineering details and performance guarantees. Thus, per Joy, the injunction merely prevents Flakt from depriving Joy of its exclusive right to sell its patented invention. We disagree. The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a).

■ In *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 953 F.2d 1360, 1374, 21 USPQ2d 1321, 1332 (Fed.Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992), discussed more fully hereinbelow, the method claims of the patent at issue were held not directly infringed by the mere sale of an apparatus capable of performing the claimed process. The sale of the apparatus in *Standard Havens* was not a direct infringement because a method or process claim is directly infringed only when the process is performed. *See Atlantic Thermoplastics Co. v. Faytex Corp.,* 970 F.2d 834, 836, 23 USPQ2d 1481, 1482–83 (Fed.Cir.1992) (Because defendant "does not manufacture ... [patentee] cannot charge ... infringement of the process claims."); *see also Atlantic Thermoplastics Co. v. Faytex Corp.,* 974 F.2d 1279, 1284, 23 USPQ2d 1801, 1805 (Fed. Cir.1992) (Newman, J., dissenting to denial of in banc) ("[P]rocess claims ... are infringed only when the process is used."); *BB Chem. Co. v. Ellis,* 117 F.2d 829, 833, 48 USPQ 487, 491 (1st Cir.1941) ("To be direct infringers, the defendants must have used the plaintiff's process."); *Philad Co. v. Lechler Lab., Inc.,* 107 F.2d 747, 748, 43 USPQ 284, 286 (2d Cir.1939) ("The patent sought to be enforced is on a process of waving hair. It does not give the plaintiff a monopoly in the appliances by which the process is operated."); *Moore Filter Co. v. Tonopah–Belmont Dev. Co.,* 201 F. 532, 541 (3d Cir.1912) ("In considering the question of the infringement of a process patent, it must be borne in mind that ... the test of infringement is whether such

---

5. Because of the precise language of the statute it has been suggested that active inducement of infringement under 35 U.S.C. 271(b) (1988) may be "a type of *direct* infringement." *Hewlett–* *Packard,* 909 F.2d at 1469, 15 USPQ2d at 1529 (emphasis added). We do not use the term here to include infringement under 35 U.S.C. 271(b).

process is utilized by the infringer."); *Dennison Mfg. Co. v. Ben Clements & Sons, Inc.,* 467 F.Supp. 391, 427, 203 USPQ 895, 924 (S.D.N.Y.1979) ("To be a direct infringer of the method claims, defendant must be found to have used the attachments in question in the manner prescribed in the method claims."). That the sale of equipment to perform a process is not a direct infringement of the process within the meaning of section 271(a) is further highlighted by 35 U.S.C. § 271(c) (1988), discussed *infra*, which provides in pertinent part that such a sale may be a contributory infringement. To hold that the sale of equipment which performs a patented process is itself a direct infringement would make that portion of section 271(c) relating to the sale of an apparatus for use in practicing a patented process meaningless. Therefore, an injunction restraining Flakt from contracting to build or actually building plants capable of performing the patented FGD process cannot be justified on the ground that sale of the plant or equipment would directly infringe the '873 method claims.

### B.

### *Sale of Flakt's Equipment Does Not Constitute Infringement Absent Direct Infringement*

■ Although not direct infringement under section 271(a), a party's acts in connection with selling equipment may, however, constitute active inducement of infringement or contributory infringement of a method claim under 35 U.S.C. § 271(b) and (c).[6] Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement. *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 526, 92 S.Ct. 1700, 1706, 32 L.Ed.2d 273, 173 USPQ 769, 772 (1972) (contributory infringement); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341, 81 S.Ct. 599, 602, 5 L.Ed.2d 592, 128 USPQ 354, 357 (1961) (con-

tributory infringement); *Standard Havens,* 953 F.2d at 1374, 21 USPQ2d at 1332 (contributory infringement); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670, 673, 15 USPQ2d 1540, 1543 (Fed. Cir.1990) (active inducement and contributory infringement); *Moleculon Research Corp. v. CBS, Inc.,* 872 F.2d 407, 410, 10 USPQ2d 1390, 1393 (Fed.Cir.1989) (active inducement); *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.,* 803 F.2d 1170, 1173, 231 USPQ 297, 299 (Fed.Cir.1986) (contributory infringement); *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687, 231 USPQ 474, 477 (Fed.Cir.1986) (active inducement and contributory infringement). Thus, either form of "dependent infringement" cannot occur without an act of direct infringement.

We find this case indistinguishable in substance from *Standard Havens.* There, we reviewed a district court's award of damages against a manufacturer/seller of an apparatus which, if used in the United States during the term of the patent at issue, would have infringed the method claims in the patent. The patentee presented no evidence that the apparatus was used in the United States. *Standard Havens,* 953 F.2d at 1374, 21 USPQ2d at 1332. On appeal, the patentee argued that, although the apparatus was sold to a foreign customer, the sale took place in the United States and was, therefore, an infringement of the method claims for which the patentee was entitled to damages. We vacated the portion of the damage award attributable to the unit sold to the foreign buyer because it was not an infringing sale. The critical factor was that the patent claimed only a process, not the apparatus for implementing that process. *Id.*

Our holding in *Standard Havens,* first, reflects the previously discussed principle that a method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented

---

6. Under section 271(b) one who "actively induces infringement of a patent shall be liable as an infringer," and under section 271(c) one who "sells ... a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to

be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

method. The sale of the apparatus is not a sale of the method. A method claim is *directly* infringed only by one practicing the patented method.

■ Second, *Standard Havens* holds that the act of selling equipment which will not be used so as to directly infringe a method claim cannot constitute one of the dependent types of infringement, that is, either contributory infringement or inducement of infringement. Joy seeks to distinguish *Standard Havens* because the intended use of the equipment in that case was outside the United States while here the use will be beyond the term of the patent. We see this as a distinction without a difference. If the plant sold by Flakt cannot be used by the purchaser to infringe directly because it will not be operational within the term of the patent, Flakt cannot be guilty on a theory of contributory infringement with respect to that plant.

Joy next argues that Flakt can be enjoined from sales of noninfringing plants because it has been found to be an infringer. No doubt an injunction may be issued to enjoin Flakt from either direct or dependent infringement. *Pac–Tec, Inc. v. Amerace Corp.*, 903 F.2d 796, 802, 14 USPQ2d 1871, 1876 (Fed. Cir.1990). However, an injunction may not issue precluding acts under a theory of dependent infringement where the acts do not contribute to or induce direct infringement by another. With respect to future contracts, Flakt has been placed in a different position from other potential manufacturers of the same equipment who may sell to purchasers so long as the purchasers are unable to practice the invention during the term of the patent. To this extent, the injunction is punitive rather than remedial.

Joy finally argues that a district court may prevent an infringer from finessing a patentee out of sales by a "scheme to avoid patent infringement," citing this court's decision in *Paper Converting Machine Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 15, 19, 223 USPQ 591, 594, 597 (Fed.Cir.1984), and that the current injunction is necessary to prevent just such a "scheme" by Flakt. Joy cites to our statement in *Paper Converting Machine*

that "[i]f without fear of liability a competitor can assemble a patented item past the point of testing, the last year of the patent becomes worthless whenever it deals with a long lead-time article." *Id.* at 19, 223 USPQ2d at 597.

In *Paper Converting Machine*, the district court found the defendant liable for infringing the plaintiff's patent on an automatic paper rewinder. *Paper Converting Machine Co. v. Magna–Graphics Corp.*, 211 USPQ 788 (E.D.Wis.1981), *aff'd*, 680 F.2d 483 (7th Cir. 1982). In the damages phase of the trial, the district court awarded damages for the sale of two infringing rewinders by the defendant. On appeal to this court,[7] the defendant argued that one of these two rewinders (the Fort Howard rewinder) did not infringe the patent and, therefore, could not be the basis for damages. With respect to the Fort Howard rewinder, the defendant had made all parts, tested subassemblies, and sold the patented rewinder disassembled. In a further effort to avoid infringement, the defendant and the purchaser agreed that the rewinder would not be finally assembled until two days after the patent expired. This court affirmed that the above conduct was, nevertheless, an infringing sale of the patented machine. *Id.*, 745 F.2d at 24, 223 USPQ at 600.

*Paper Converting Machine* is easily distinguishable from the present case. In *Paper Converting Machine*, 745 F.2d at 19, 223 USPQ at 597, we stated:

It is undisputed that [the defendant] intended to finesse [the patentee] out of the sale of a machine on which [the patentee] held a valid patent during the life of that patent.

While a method claim had been asserted along with the apparatus claims, the method claim was not discussed nor found infringed by the Fort Howard devices. The analysis focused solely on the patented machine, not on the process implemented by the machine.

In the present case, the patent contains only method claims, which, as discussed above, are directly infringed only when the method is practiced. Joy is basically seeking

---

7. In the interim between the appeal of the liability determination and the appeal of the damages award, this court was formed and thus obtained jurisdiction of the later appeal.

to convert its method claims into apparatus claims. The facts of *Paper Converting Machine* do not support the injunction in the present case.

In justifying the scope of the injunction, the district court relied on *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 100 S.Ct. 2601, 65 L.Ed.2d 696, 206 USPQ 385 (1980), in which the Supreme Court analyzed the interrelationship between contributory infringement and patent misuse as codified under subsections 271(c) and (d), respectively. *Id.* at 200, 100 S.Ct. at 2615, 206 USPQ at 398. The Court held that because a patent holder has the right to control nonstaple goods which are capable only of *infringing* use in a patented invention, assertion of that right is not a misuse of the patent. The Court did not address a patentee's right to an injunction against dependent infringement which is unnecessary to prevent direct infringement nor address the public's right to make, use, or sell nonstaple goods which would not be used until after the expiration of the patent term.

■■■ In sum, the district court erred as a matter of law in holding that a seller of equipment could be a contributory infringer where it is established that "there will be no direct infringement, i.e., use of the machine/system within the patent term." No argument is made that Flakt can be an active inducer of infringement without direct infringement. Thus, the injunction cannot be sustained on the ground that sales of equipment without use of the method within the patent term constitute contributory infringement of the method claim.

## C.

### Protection From Future Direct Infringement

Joy maintains that the scope of the injunction is necessary to prevent use of the patented method *during the term of the patent* which extends to July 21, 1998. Per Joy, some new plants could be completed within the term, and it would not know whether or not the process was used. Joy's concern is a legitimate one. Flakt argues that it requires approximately five years to construct a plant, from contracting to completion, and that Joy's fear does not justify enjoining all of its future contracts. Flakt further represents that the equipment for the patented process can and will be disabled as it has been in existing plants which are now operating without any possible infringement of Joy's rights.

Clearly, the scope of the injunction as issued cannot be sustained as necessary to prevent acts of direct infringement within the patent term. This is true even under Joy's assertion that a plant can be completed in less than five years. Flakt is now precluded from contracting even where there is *no* possibility of an operational plant within the patent term and, thus, no possibility of direct infringement. This is not a case involving assembly line production and sale of a machine designed to practice a patented method which a purchaser can be expected to put to immediate use. Both parties agree there is a very long lead time before use can begin. Further, it is possible that in the interim between contracting for the construction of a plant and actually building the new plant, a new development will lead to a change in design and Flakt will never actually build a plant capable of performing the patented process. *See Ecodyne Corp. v. Croll–Reynolds Eng'g Co.*, 491 F.Supp. 194, 197, 206 USPQ 601, 604 (D.Conn.1979) ("Until the apparatus is constructed and ready for use, it cannot be clear whether infringement has taken place. Indeed, defendant may breach its contract and produce something entirely different or nothing at all. In that event, infringement will never have taken place."). *See also Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 765, 13 USPQ2d 1820, 1823 (Fed.Cir.1990) (threat of possible infringement in nine months fails to state a claim under 35 U.S.C. § 271). In sum, all future activities respecting new plants cannot be enjoined.

We, of course, are not in a position to determine what length of time it might take to complete a plant. We also do not know whether it is feasible to disable the equipment so that it cannot be tested by Flakt or used by its customers. If this is possible, however, it might be sufficient for protection of Joy's interest to order Flakt to make

periodic reports to Joy as an alternative to prohibiting otherwise lawful sales activity. If direct infringement occurs with Flakt-supplied equipment, that is, the method is used before the patent term expires, Flakt would be liable not only for infringement but for contempt as well, even under a narrow injunction. It is in Flakt's interest to take steps to preclude direct infringement.

The district court is, of course, in the best position to fashion an injunction tailored to prevent or remedy infringement. *Roche Prods. v. Bolar Pharmaceutical Co.,* 733 F.2d 858, 865, 221 USPQ 937, 942 (Fed.Cir. 1984). Judicial restraint of lawful competitive activities, however, must be avoided. *See Deepsouth Packing,* 406 U.S. at 529–31, 92 S.Ct. at 1707–08, 173 USPQ at 773–74; *United Transp. Union v. State Bar of Mich.,* 401 U.S. 576, 584, 91 S.Ct. 1076, 1081, 28 L.Ed.2d 339 (1971); *Eli Lilly and Co. v. Medtronic, Inc.,* 872 F.2d 402, 404, 10 USPQ2d 1304, 1306 (Fed.Cir.1989), *aff'd,* 496 U.S. 661, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990).

In sum, we hold only that the present injunction which precludes Flakt from activities that are not necessary to prevent infringement of the patented process cannot stand.

### D.

#### *Duplicitous Conduct as Justification for Broad Injunctive Relief*

Lastly, Joy argues that "Flakt succeeded in hiding from Joy the very existence of several infringing systems through many months of discovery" and therefore created a justification for broad injunctive relief. After questioning during oral argument, Joy conceded that it knew of the existence of these plants. While Joy attempted to relate to the court what it really meant by the above statement, the end result is that this

statement is simply unsupportable. The statement was apparently designed to cast Flakt in a bad light and to imply that the district court took such equitable factors into account when determining the scope of the injunction. Joy flirts dangerously close to frivolity in this assertion. While vigorous advocacy is accepted, an officer of the court must not attempt to mislead the court. Joy's argument that Flakt's "concealment" supports a broad injunction is not grounded in fact.

### V.

### *CONCLUSION*

The stay of the injunction and the injunction are vacated. The matter of an injunction is remanded to the district court for reconsideration. Any injunction must conform with Fed.R.Civ.P. 65(d). The new injunction may enjoin Flakt's acts which constitute direct, induced or contributory infringement during the term of the patent. Whether additional conditions are necessary to ensure that Flakt does not enable direct infringement during the patent term by others of which Joy might be unaware, we leave to the district court to determine and to fashion an appropriate remedy therefor if necessary.

### VI.

### *COSTS*

Costs are awarded to appellant.

**VACATED AND REMANDED.**