**TECHNICAL MANUFACTURING CORPORATION, Plaintiff,**

v.

**INTEGRATED DYNAMICS ENGINEERING, INC., Defendant.**

**No. CIV.A.99–11362–DPW.**

United States District Court, D. Massachusetts.

Jan. 2, 2002.

William E. Hilton, Samuels, Gauthier & Stevens, Allen C.B. Horsley, Thomas Fenerty, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Boston, MA, for Plaintiff.

Blair L. Perry, Michael Zeliger, Fish & Richardson, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

In this action, Technical Manufacturing Corporation ("TMC") has alleged that Integrated Dynamics Engineering ("IDE") literally infringed United States Patent No. 5,660,255 (the " '255 patent") by selling or offering to sell, within the term of the patent, hard-mounted piezoelectric-actuated vibration isolation systems that contain each element of multiple claims of the patent. TMC has moved for reconsideration and amendment of so much of my September 27, 2001 Memorandum and Order as awarded summary judgment *sua sponte* to IDE on the question whether it actually sold an infringing product during the patent term. TMC's principal contention in its motion is that it was error for me to define a "sale" under the relevant statutory provision as completed upon the execution of an enforceable sales contract, prior to delivery or installation.

## I. BACKGROUND

Patent law provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States ... during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Both in its original motion for partial summary judgment and now, TMC has sought to establish that IDE "sold" an infringing product within the meaning of this provision. TMC's contention is premised upon evidence said to show that IDE did not complete its installation of a piezoelectric-actuated vibration isolation system for a particular customer, DPR Construction, until after the '255 patent had gone into effect (on August 26, 1997).[1] TMC acknowledges that IDE received the sales order from DPR Construction well before the commencement of the patent term, and does not contest the validity of delivery notes and customer invoices, submitted by IDE, that demonstrate substantial delivery in May 1997. However, TMC has urged me to view a

---

1. In this regard, TMC has submitted a corrected invoice from IDE dated September 19, 1997, and a "change order" from DPR Construction dated November 3, 1997. TMC also has offered the testimony of Thomas Cellucci, the former executive vice president of worldwide sales and marketing and general manager of IDE, recalling that installation of the system continued at DPR Construction's facilities through November 1997.

"sale," for purposes of 35 U.S.C. § 271(a), as effected only when installation is fully complete.

### A. *TMC's Original Motion for Partial Summary Judgment*

Advancing its contention in its original motion for partial summary judgment, TMC relied entirely on the meaning ascribed to the term "sale" in *Black's Law Dictionary* (4th ed.). Indeed, TMC there represented not only that "the patent statute does not define the term," but also that "case law sheds no light on the issue."

In my original disposition, I too noted that Congress has provided no further guidance as to what constitutes a "sale" under 35 U.S.C. § 271(a). It also appeared to me, consistent with TMC's representation about the state of the case law, that the Federal Circuit had not directly addressed the question. Looking, then, to the ordinary commercial meaning of the term "sale"—as I presumed TMC meant to do by relying on *Black's Law Dictionary*—I found instructive the Federal Circuit's recent definition of a "sale" as "having been accomplished when a contract for the transfer of goods has been completed." *Enercon v. International Trade Commission*, 151 F.3d 1376, 1382 (Fed.Cir.1998) (adding "It is common for a 'sale' to be completed even though delivery is to be made in the future."). Recognizing that *Enercon* was construing the term "sale" in a different statute—the tariff provisions of 19 U.S.C. § 1337—I nevertheless found its definition persuasive because the court was setting forth an understanding of the "ordinary meaning" of the term, distinct from any particular statutory context. *Id.* at 1381 ("We ... believe that Congress intended to give the term its ordinary meaning."). Upon TMC's concession that

the *contract* (if not TMC's understanding of the *sale*) between IDE and DPR Construction was completed well before the '255 patent had gone into effect, I found application of the *Enercon* definition of a "sale" to 35 U.S.C. § 271(a) not only made it impossible to grant TMC's motion for partial summary judgment on the ground that IDE had sold an infringing product during the patent term, but in fact supported a *sua sponte* grant of summary judgment to defendant IDE.[2]

### B. *TMC's Current Motion for Reconsideration*

In its motion for reconsideration, TMC's critical argument is that I committed legal error in looking to the ordinary commercial meaning of the term "sale," as understood by the Federal Circuit in another statutory context. TMC now suggests the Federal Circuit has "clearly" held that, in TMC's words, "merely entering into a contract for the delivery of an infringing device is not enough to constitute a 'sale'" for purposes of 35 U.S.C. § 271(a).

TMC's argument rests on the Federal Circuit's decision in *Joy Technologies v. Flakt, Inc.*, 6 F.3d 770 (Fed.Cir.1993). In *Joy Technologies*, the court declined to affirm an injunction against alleged patent infringement, primarily because it could not find direct infringement of a process patent merely upon the sale of equipment to perform that process:

> The sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a).... [A] method or process claim is directly infringed only when the process is performed.

*Id.* at 773–774. In particular, TMC emphasizes the favorable citation in *Joy Tech-*

---

**2.** I found the *sua sponte* grant to be merited where TMC's own motion had given it ample notice and opportunity to develop fully its position that IDE had sold an infringing product after the issuance of the '255 patent.

*nologies,* 6 F.3d at 776, of *Ecodyne Corp. v. Croll–Reynolds Eng'g Co.,* 491 F.Supp. 194, 197 (D.Conn.1979), a district court case that articulated its similar decision to deny an injunction against alleged patent infringement using somewhat broader language:

> When the thing in question is an apparatus and the issue is patent infringement by sale, partial delivery will not suffice; in order for there to have been a sale within the meaning of 35 U.S.C. § 271(a), the entire apparatus must have been constructed and ready for use. Until the apparatus is constructed and ready for use, it cannot be clear whether infringement has taken place.

*Ecodyne,* 491 F.Supp. at 197.

TMC additionally notes two district court opinions after *Joy Technologies* that expressly drew on *Ecodyne* in denying injunctions against alleged patent infringement. *See Quality Tubing, Inc. v. Precision Tube Holdings Corp.,* 75 F.Supp.2d 613, 621 (S.D.Tex.1999) ("The negotiation and execution of a contract to sell is not, standing alone, a sale that is an act of infringement under section 271(a) and (g). The cases also require performance."); *B.F. Goodrich Co. v. Aircraft Braking Sys., Corp.,* 1994 U.S.Dist.LEXIS 21537, at *18 (D.Del., November 10, 1994) ("This Court finds the *Ecodyne* decision persuasive. For the purposes of Section 271(a), a 'sale' is not complete until the infringing product is actually delivered to a purchaser.").

My task, then, is to decide whether this newly argued line of cases indicates that, contrary to my original determination, Federal Circuit precedent supports TMC's view of IDE's "sale" to DPR Construction as having occurred, for purposes of 35 U.S.C. § 271(a), only when installation was fully complete.

## II.  DISCUSSION

■ The question presented is of some complexity. In the first place, a general principle that "sales" under 35 U.S.C. § 271(a) are never effected until installation is complete would pose a certain degree of conceptual difficulty in distinguishing the several forms of actionable infringement. Perhaps a coherent line might be drawn between the stage where an infringing product is "ready for use," *Ecodyne,* 491 F.Supp. at 197 ("for there to have been a sale ..., the entire apparatus must have been constructed and ready for use"), and where it is actually "used," a separate basis for liability under 35 U.S.C. § 271(a). However, always treating a sale as incomplete absent final installation would seem to "subsume the prohibition against 'selling' [within] the prohibition against 'making.'" Richard A. Leavitt, *The "Selling" of Patented Goods: In Search of a Definition,* 66 Tul.L.Rev. 1903, 1928 (1992) (internal quotation marks added). There appears to be no good reason why the use of the term "sells" in 35 U.S.C. § 271(a) should be understood as bereft of its own distinct meaning.[3]

Compounding the conceptual difficulty is the fact that both *Joy Technologies* and *Ecodyne* arose during an earlier period when United States patent law did not include liability for *offers* to sell infringing products, a ground that did not go into effect until January 1, 1996. *See Uruguay Round Agreement Act,* Pub.L. No.103–465, § 533(a)(1), 108 Stat. 4809, 4988 (1994). The Federal Circuit has since proved will-

---

**3.** Indeed, it is generally the case that "[a] statute is construed ... in a manner that does not render any of its provisions superfluous, contradictory, or illogical." *Rotec Industries, Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1259 (Fed.Cir.2000) (Newman, J., concurring).

ing to consider potential "offer to sell" liability with respect to products not yet fully designed, much less manufactured. *Rotec Industries, Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1249 (Fed.Cir.2000). Consequently, injunctions against patent infringement now appear to be available well before the point in time required by the court in *Ecodyne* (*i.e.*, when an "apparatus is constructed and ready for use"). *Ecodyne*, 491 F.Supp. at 197.

At any rate, I am not persuaded that the newly argued line of precedent is as clearly on point as TMC now characterizes it to be. In particular, I note that while the district court's language in *Ecodyne* is indeed broad, the Federal Circuit's decision in *Joy Technologies* rests on a much narrower holding: when a "patent contains only method claims," such claims are "directly infringed only when the process is performed." *Joy Technologies*, 6 F.3d at 773, 775. Or, to approach it another way, "the sale of equipment to perform a process is not a sale of the process" itself, for purposes of 35 U.S.C. § 271(a). *Id.* at 773.

Accordingly, I do not consider *Joy Technologies* to address the case before me, where IDE's alleged infringement bears on the nature of the *apparatus* (or machine) claimed in the '255 patent. I recognize the '255 patent contains method claims as well, but I find it distinguishable from the patent at issue in *Joy Technologies*, which claimed *only* a process for desulfurizing flue gas (and nothing specific about the equipment which could be used to perform this process). *Id.* at 771–72. The '255 patent, by contrast, can be infringed by a particular piece of equipment—i.e. a piezoelectric-actuated vibra-

tion isolation system that contains each element of even one of the patent's claims—without the practice of some further methodology.

Although the language of *Ecodyne* might appear to elide the distinction I have identified,[4] *Joy Technologies* is quite clear in this regard. Indeed, the narrowness of its stated holding is reinforced by its treatment of *Paper Converting Machine Co. v. Magna–Graphics Corp.*, 745 F.2d 11 (Fed. Cir.1984), a case in which the Federal Circuit held liable for patent infringement a defendant who had sold and delivered an infringing machine in disassembled form (and under an agreement that the machine would remain so until two days after expiration of the patent). The Federal Circuit in *Joy Technologies* distinguished *Paper Converting* (and its finding of patent infringement notwithstanding the lack of an operable assembly during the patent term) precisely on the ground that *Paper Converting's* analysis focused on potential infringement of a patented *machine* (and not on the process to be implemented by it). *Joy Technologies*, 6 F.3d at 775.

■ I am therefore unconvinced that Federal Circuit precedent compels me to regard IDE's sale to DPR Construction as having occurred only when installation was fully complete, as might be the case on a different set of facts (involving method claims only). I note that, for conceptual reasons having to do with the terminology of 35 U.S.C. § 271(a), especially as amended to include "offers to sell," the opposite would in fact appear the more logical result.

At the same time, the exercise of addressing the newly presented argument

---

4. The facts of *Ecodyne*, however, provide further support for the distinction: "Each of the claims of each of the patents requires the application of anion and cation exchange resins to a filtering device. Those resins would

not be applied by [the defendant] in construction of the apparatus. At most, [the defendant] would provide an apparatus capable of receiving the resins mentioned in the claims." *Ecodyne*, 491 F.Supp. at 198.

has caused me to rethink my original approach to IDE's potential liability arising out of its transaction with DPR Construction. Upon reflection, I am prepared to recognize that the inquiry into when a sale has occurred for purposes of 35 U.S.C. § 271(a) may not be one ultimately found amenable, by the Federal Circuit, to bright-line rules—either of the variety TMC has proposed, or the one pursuant to which I originally granted summary judgment *sua sponte* to IDE. I cannot definitely say, for example, that delivery (or even installation) will never be relevant to the determination of whether or when a sale has been effected. Neither can I conclude that either ought always to be controlling.

Given the lack of dispositive precedent on the issue, the prudent course is to engage in specific factfinding to determine when the IDE/DPR contract became enforceable and when the contemplated system was installed, and to resolve the question of whether a sale was completed, for purposes of 35 U.S.C. § 271(a), on the basis of the full transactional picture that emerges.

Accordingly, having set this matter for trial, I hereby give notice that I will engage in alternative factfinding to determine whether TMC's definition of a "sale" under 35 U.S.C. § 271(a) has been met.

### III. CONCLUSION

For the reasons set forth more fully above;

I ALLOW plaintiff TMC's motion to reverse the grant of summary judgment in IDE's favor on the question of whether IDE sold an infringing product to DPR Construction during the patent term and reserve the issue for trial of this matter.