ENPAT, INC., et al., Plaintiffs,

v.

MICROSOFT CORPORATION,
et al., Defendants.

No. Civ. A. 97–1909–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 22, 1998.

Craig C. Reilly, Richards, McGettigan, Reilly & West, Alexandria, VA, for Plaintiffs.

William D. Dolan, III, Venable, Baetjer & Howard, McLean, Andrew C. Bisulca, Springfield, VA, for Defendants.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is defendant Microsoft's Motion for Partial Summary Judgment (Foreign Sales).

Plaintiffs allege that two Microsoft products, Microsoft Project and Microsoft Team Manager, contributorily infringe, or actively induce infringement of, plaintiffs' patent, U.S. Patent No. 5,548,506 ("the '506 Patent").[1] As relief, plaintiffs seek to force Microsoft to pay a reasonable royalty of $13.2 million for its domestic sales and $11.8 million for its foreign sales of these products. Microsoft has responded with the instant Motion.

---

1. In their original Complaint, plaintiffs alleged that Microsoft's manufacture and foreign and domestic sales of six software products constituted direct and indirect infringement of the '506 patent. The six Microsoft products at issue were: Microsoft Project, Microsoft Team Manager 97, Microsoft Schedule+, Microsoft Outlook, Microsoft Exchange Server, and The Microsoft Network. By an order entered on April 3, 1998, the Court held that Microsoft's manufacture and sale of the six disputed products did not constitute direct infringement, and granted summary judgment in its favor on this issue. In an April 17, 1998, Order, the Court further held that four of the products at issue had substantial non-infringing uses and that Microsoft's manufacture and sale of these products could not constitute contributory infringement or active inducement to infringe. Thus, only the two products mentioned above remain at issue in this action.

In its Motion for Partial Summary Judgment (Foreign Sales), Microsoft contends that: (1) its foreign sales of Microsoft Project and Microsoft Team Manager do not constitute contributory infringement or active inducement as defined in 35 U.S.C. § 271(b),(c) or (f); and that (2) even if its domestic sales of the above products contributorily infringe or actively induce infringement, its foreign sales may not be used in the calculation of damages for such violation.

█ Microsoft's argument against infringement is straightforward. To hold a party liable for contributory infringement or active inducement of infringement, there must be direct infringement. *See Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed.Cir.1993). A method patent such as the '506 patent may be directly infringed only by practicing the patented method.[2] *See Id.* at 773. Furthermore, in order to constitute direct infringement under 35 U.S.C. § 271(a), the accused use must occur "within the United States." 35 U.S.C. § 271(a); *see Akzona, Inc. v. E.I. du Pont de Nemours*, 662 F.Supp. 603, 611–13 (D.Del. 1987). In this case, Microsoft argues that any use of plaintiff's method by foreign software purchasers has occurred outside of the United States, and therefore cannot constitute direct infringement. Because there has been no direct infringement, Microsoft reasons, its foreign sales of Microsoft Project and Microsoft Team Manager cannot constitute contributory infringement or active inducement as set forth in 35 U.S.C. § 271(b) or (c).

Plaintiffs do not dispute this conclusion. Instead, they argue that Microsoft's foreign sales of Microsoft Project and Microsoft Team Manager violate 35 U.S.C. § 271(f)(2), which expressly prohibits certain types of foreign sales by providing that:

> Whoever ... supplies ... in or from the United States any component of a patented invention ... intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred

within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(2). In response, Microsoft argues that § 271(f) applies only to the assembly of patented products abroad, and does not apply to method patents, which have no components.

Microsoft relies on the legislative history of § 271(f), in which Congress explained that it enacted § 271(f) in response to the Supreme Court's decision in *Deepsouth Packing v. Laitram Corp.*, 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), holding that a defendant's sale of components of a shrimp deveining machine for assembly abroad did not constitute infringement. *See* . 1984 U.S.C.C.A.N. 5828 ("This proposal responds to the United States Supreme Court decision in *Deepsouth Packing Co. v. Laitram Corp* concerning the need for a legislative solution to close a loophole in patent law."). In particular, the legislative history states that § 271(f) "will prevent copiers from avoiding U.S. patents by supplying components of a patented product in this country so that the assembly of the components may be completed abroad." *Id.* (emphasis added).

Microsoft also relies on cases construing § 271(f), in which courts have declined to apply the provision to patents which do not describe a product or apparatus that may be assembled abroad. For example, when considering a process patent in *Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360 (Fed.Cir.1991), the Federal Circuit held that a defendant's foreign sales of a machine which used a patented asphalt-making process did not implicate § 271(f). *Id.* at 1374. Similarly, in *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 955 F.Supp. 220 (S.D.N.Y.1997), the court held that the plaintiff's design patent for a shoe sole had no component parts to assemble, and as such was beyond the scope of § 271(f). *See id.* at 231.

█ Plaintiffs counter that the same 1984 Amendment which created § 271(f) also created § 271(g), which provides that:

---

**2.** The inventor, Raj, originally applied for a system patent, which was rejected. On amendment, Raj styled his application as a claim for a method patent, which was granted. *See* Def. Ex. B at 60–61.

Whoever without authority imports into the United States or offers to sell ... or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer.

35 U.S.C. § 271(g). Plaintiffs argue that Congress' decision to enact § 271(g) indicates an intent to protect against the use of patented processes abroad, which by statutory definition includes method patents. *See* 35 U.S.C. § 100(b) (defining "process" so as to include a "process, art or method"). While we do not disagree with plaintiffs' interpretation of § 271(g), we find that § 271(g) hurts rather than helps their § 271(f) argument because it shows that Congress knew how to protect against foreign use of process patents, and chose to limit such protection to uses which result in the introduction of products into the United States. The legislative history confirms this, stating that the 1984 Amendment "extends only to products made in another country and subsequently imported into the United States." 1984 U.S.C.C.A.N. 5827. Clearly, had Congress intended to prohibit U.S. companies from exporting products which allow foreign companies to make unauthorized use of patented methods, it could have done so in clear, unambiguous language like that found in § 271(g). Instead, we agree with Microsoft that the language and legislative history of § 271(f) demonstrate an exclusive focus on the sale of components patented in the United States for combination into a finished product, apparatus, or invention abroad.

In the alternative, plaintiffs argue that the '506 patent describes specific components which might be assembled abroad, for example a central computer server, remote terminals, and other computer equipment envisioned by the patented method. We find this argument unconvincing. Like the asphalt process in *Standard Havens* or the shoe design in *Aerogroup*, plaintiffs' patent describes the steps required to accomplish a particular task rather than the composition of a patented physical product. While it is true that any process involves the use of physical objects, this alone is not enough to bring a method patent within the purview of § 271(f), as the above cases illustrate. We conclude that plaintiffs' patent has no "components" for purposes of § 271(f).

A court must award at least a reasonable royalty as damages for patent infringement. *See* 35 U.S.C. § 284. As a corollary to their § 271(f) argument, plaintiffs ask this Court to take Microsoft's foreign sales into account when determining a reasonable royalty for any infringement in this case. Microsoft argues that plaintiffs are entitled to a reasonable royalty only as to infringing sales, which do not include Microsoft's foreign sales. *See Nickson Indus., Inc. v. Rol Mfg. Co.,* 847 F.2d 795, 799 (affirming district court's apportionment of infringing, non-infringing sales and awarding damages only for former); *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1546 (Fed.Cir.1987) (Fed.Cir.1988) (affirming district court's denial of damages for foreign sales because such sales did not infringe); *Sutton v. Gulf Smokeless Coal Co.,* 77 F.2d 439 (4th Cir.1935). In response, plaintiffs argue that the determination of a reasonable royalty should include not only infringing sales but "any other economic factor" that prudent business people would consider when negotiating licenses. *See Micro Motion, Inc. v. Exac Corp.,* 761 F.Supp. 1420, 1434 (N.D.Cal.1991). Plaintiffs contend that Microsoft's foreign sales are one such factor.

■ The law of this Circuit supports Microsoft's position. *See Sutton,* 77 F.2d at 441. In *Sutton,* when the plaintiff claimed damages for 18 coal-sorting tables, the Fourth Circuit explained "that any damages with respect to the 9 tables sold for foreign use must be eliminated." *Id.* The court reasoned that "[t]he claims of the patents relied on are process claims, and no use of the process in a foreign country would constitute an infringement of these claims." *Id.* Following that holding, we find that Microsoft cannot be required to pay damages for foreign sales which do not violate United States patent laws. Moreover, while we recognize that the determination of a reasonable royalty envisions a hypothetical license negotiation between the infringer and the patent owner, using factors delineated in *Georgia–Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1119–20 (S.D.N.Y.1970), none

of those factors support a conclusion that Microsoft would pay for the right to engage in foreign sales it already has a legal right to make. Accordingly, we conclude that Microsoft's foreign sales may not be taken into account in any determination of a reasonable royalty.

For the reasons stated in open court on May 15, 1998, and in this Memorandum Opinion, Microsoft's Motion for Partial Summary Judgment (Foreign Sales) is GRANTED.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.