**JRB COMPANY, INC., Plaintiff,**

v.

**PEMBERTON, INC., Defendant.**

No. 5:99–CV–1236.

United States District Court,
N.D. Ohio,
Eastern Division.

March 6, 2000.

Laura J. Gentilcore, Ray L. Weber, Renner, Kenner, Greive, Bobak, Taylor & Weber, Akron, OH, for JRB Company Inc., plaintiff.

Mark J. Skakun, III, Louis F. Wagner, Walter A. Lucas, Buckingham, Doolittle & Burroughs, Akron, OH, Robert W. Duckworth, Holland & Knight, Orlando, FL, for Pemberton Inc., defendant.

George W. Rooney, Jr., Roetzel & Andress, Cleveland, OH, for George W. Rooney, Jr., neutral.

## ORDER

GWIN, District Judge.

On February 7, 2000, Defendant Pemberton, Inc., filed a motion for summary judgment in this patent infringement action [Doc. 36]. With its motion, Pemberton says Plaintiff JRB Company's United States Patent No. 4,708,579 ("the '579 patent") was invalid for lack of novelty and was not infringed. Alternatively, Defendant Pemberton says Plaintiff JRB Company cannot recover damages arising before the filing of this action due to laches. For the reasons that follow, the Court grants Pemberton's motion for summary judgment.

### I. Background

Here, Plaintiff JRB Company claims that Defendant Pemberton infringes the '579 patent. The '579 patent, assigned to Plaintiff JRB Company, claims rights to a quick coupler for front end loaders. The quick coupler has two components: a male master connected by pins to the arms of a front end loader and a hook and eye combination female coupler.

Plaintiff JRB manufactures and sells both male coupler portions and female coupler portions for use with front end loader implements. Defendant Pemberton manufactures and sells only female coupler portions for use with front end loader implements. Both JRB and Pemberton compete for the sale of implements that attach to male couplers by hook and eye female coupler portions.

Plaintiff JRB Company here claims that Defendant Pemberton infringes claims 1, 2, 3, 4, and 5 of the '579 patent. Claims 1 and 4 of the '579 patent are independent claims. Claims 2, 3, and 5 of the '579 patent are dependent claims.

Claim 1 of the '579 patent discloses:

A coupler for a front end loader having upper and lower arms comprising:

a male master portion adapted for receipt by the arms of the front end loader; and

a female coupler portion adapted for receipt by an implement for use with the front end loader;

wherein said male master portion comprises:

a contoured face plate;

a pair of channel plates affixed to the back of said face plate, said channel plates having first and second pairs of aligned holes passing therethrough for receiving and maintaining the upper and lower arms of the front end loader by pinned connection, said channel plates further including a bridged pin extending thereacross at top ends thereof, said face plate having a slot therein in alignment with a channel formed between said channel plates; wherein said female coupler portion comprises:

a plate having a hook at an upper portion thereof for receipt by said bridged pin, and an eye protruding from a bottom portion thereof adapted to pass through said slot; and

a support face extending from said plate of said female coupler portion between said hook and said eye adapted for making contacting engagement with said contoured face plate when said bridged pin is received by said hook and said extendable pin is received by said eye.

Dependent claims 2 and 3 discloses slight modification on this claim.[1]

Independent claim 4 describes a quick coupler with male and female segments:

A coupler for a front end loader having upper and lower arms, comprising:

a male master portion having a contoured face plate with a slot therein, said slot being between two vertical parallel plates forming a channel therebetween, said plates having a bridges [sic] pin extending across a top portion thereof, and an extendable pin selectively operable to extend across said channel in juxtaposition to said slot;

a female coupler portion comprising a plate having a hook at an upper section thereof adapted for receipt by said bridged pin, and a protruding eye at a lower section thereof adapted for receipt with said slot in engagement with said extendable pin; and

wherein said plate of said female coupler portion further includes a support surface protruding from said plate between said hook and said eye for supporting contacting engagement with said contoured face of said male master portion.

Dependent claim 5 discloses a slight modification on this claim.[2]

The Court now considers the legal standard applied to Defendant Pemberton's motion.

## II. Standard of Review

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987); *SEC v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See 60 Ivy Street Corp.*, 822 F.2d at 1435.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. *See id.* But not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts that, under the substantive law governing the issue, might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they

---

**1.** Dependent claim 2 discloses:

The coupler according to claim 1 wherein said channel plates have a third set of aligned holes passing therethrough in juxtaposition to said slot.

Dependent claim 3 discloses:

The coupler according to claim 2 which further includes an extendable pin in communication between a third set of aligned holes and across said channel at said slot.

**2.** Dependent claim 5 discloses:

The coupler according to claim 4 wherein said parallel plates include pairs of aligned holes passing therethrough for pinned interconnection with the upper and lower arms.

proved them at trial a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. *See 60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to decide whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

Although patent infringement analysis usually involves both issues of law and questions of fact, summary judgment of non infringement may still be proper. *See Phonometrics Inc. v. Northern Telecom. Inc.,* 133 F.3d 1459, 1463 (Fed.Cir.1998).

The Court reviews Defendant Pemberton's motion and relevant portions of the record considering this standard and concludes that Plaintiff JRB Company's infringement claims fail.

### III. Claim Construction

■ The construction of a patent, including terms of art within its claim, is a question of law. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 383–91, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

In resolving a claim of patent infringement, a court must "first determine the meaning and scope of the patent claims at issue, a question of law, before the fact finder may resolve whether the accused device infringes the patent claims as construed by the court, a question of fact." *Storer v. Hayes Microcomputer Prod., Inc.,* 960 F.Supp. 498, 500 (D.Mass.1997).

■ In construing a patent claim, the Court looks first to the three sources of intrinsic evidence of record: the patent itself, including the claims, the specification, and, if in evidence, the prosecution history. *See Genentech, Inc. v. Boehringer Mannheim GmbH,* 989 F.Supp. 359 (D.Mass. 1997)(citing *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996)). The claim language defines the scope of the claim and "a construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claims themselves, but consults these sources to give the necessary context to the claim language." *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1552 (Fed.Cir.1997).

■ Reliance upon extrinsic evidence is improper where the public record—, i.e., the claims, specifications, and file history—unambiguously defines the scope of the claims. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d at 1588. The Court looks to extrinsic evidence to help in construing a patent claim only if the intrinsic evidence is ambiguous.[3]

---

**3.** *See Vitronics,* 90 F.3d at 1583–85; *Markman,* 52 F.3d at 980–81. Thus, "[i]f a court is able to discern the meaning of a patent's claims after considering these three sources of intrinsic evidence [i.e. the patent claims, specification and prosecution history], it should not look further to expert testimony or other evidence not part of the public record." *Revlon Consumer Prod. Corp. v. L'Oreal,* 170 F.R.D. 391, 393 (D.Del.1997). Opinion evidence on claim construction "is no better than opinion testimony on the meaning of statutory terms." *Vitronics,* 90 F.3d at 1585.

■ In interpreting the claims and specification, the construing court interprets words "as one of skill in the art at the time of the invention would understand them." *Eastman Kodak,* 114 F.3d at 1555. In addition, "the court should also consider the patent's prosecution history ... in order to ascertain the true meaning of the language used in the patent claim." *Markman,* 52 F.3d at 980; *see also Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 452 (Fed.Cir.1985) ("[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.").

■ Terms used in the claim are to be given their ordinary and customary meaning "unless another meaning is specified or evident from the patent history." *Storer,* 960 F.Supp. at 501 (citations omitted). Here, the parties have agreed that the Court should give the words and terms employed in the '579 patent their ordinary and accustomed meaning. The Court now evaluates Defendant Pemberton's motion considering the ordinary and customary meaning of terms in the '579 patent.

## IV. Discussion

Defendant Pemberton says no material evidence supports Plaintiff JRB Company's claims that Pemberton infringes the '579 patent. First, Pemberton says it does not manufacture the male portion of the quick coupler. Instead, Pemberton says most of its customers use a male portion supplied by Plaintiff JRB Company.

Second, Defendant Pemberton says its quick coupler is different from the teaching of the '579 patent in several ways. Pemberton says that it does not have the support face (43) placed between the hook (38) and the eye (42) for making contacting engagement with the contoured face plate (12). Instead, Pemberton says its female coupler support face is below the eye, not between the hook and the eye.

Plaintiff JRB Company admits that Pemberton does not position its support face in the same location as identified in the '579 patent and that Pemberton does not literally infringe its '579 patent. Nevertheless, Plaintiff JRB Company says Defendant Pemberton infringes the '579 patent under the doctrine of equivalents.

■ The doctrine of equivalents prevents a "fraud on the patent," *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). The doctrine prevents an infringer from stealing the benefit of the invention by making minor changes to the patent's teaching. A patentee may invoke the doctrine of equivalents against the producer of a device "if it performs substantially the same function in substantially the same way to obtain the same result." *Id.* (citing *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147 (1929)). Such a device is deemed to be the same as the patented device, despite minor differences between the two products.

The doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). An element in the accused product is equivalent to a claim element if the differences between the two are "insubstantial" to one of ordinary skill in the art. *See id.* "Although equivalence is a factual matter normally reserved for a fact-finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence." *Cortland Line Co., Inc. v. Orvis Co., Inc.,* 203 F.3d 1351, 1359 (Fed.Cir. 2000) (quoting *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed.Cir. 1997)).

■ The doctrine of equivalents has limits. It cannot be used to ignore the actual

language of the patent. *See K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1367 (Fed. Cir.1999). This Court must closely follow the text of the claim: "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.* (citing *Warner–Jenkinson,* 520 U.S. at 29, 117 S.Ct. 1040). Therefore, the doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety. *See Warner–Jenkinson,* 520 U.S. at 29, 117 S.Ct. 1040.

 Under the doctrine of equivalents, a patentee cannot claim coverage where that patentee has "surrendered" coverage during the prosecution of the patent to avoid overlapping prior art patents. In other words, the patentee may not recapture, by use of the doctrine of equivalents, any subject matter that the patentee expressly surrendered to obtain a patent. *See Litton Systems, Inc. v. Honeywell, Inc.,* 140 F.3d 1449, 1458 (Fed.Cir.1998). The doctrine of equivalents does not include a structure specifically excluded from the scope of the claims to overcome obviousness. *See Dolly, Inc. v. Spalding & Evenflo Cos.,* 16 F.3d 394, 400 (Fed.Cir. 1994). Any amendments to patent claims made to secure patentability also act to estop the applicant from reclaiming the forfeited claim.

Defendant Pemberton shows that Plaintiff JRB Company should be estopped from claiming that the placement of the support face below the eye is equivalent to the position shown in of the '579 patent. To restate, the '579 patent taught a support face between the hook (38) and the eye (42), not below the eye.

After Plaintiff JRB Company's initial application to patent the quick coupler was denied on the grounds of obviousness, JRB made several representations to the United States Patent & Trademark Office to persuade that office that the coupler was not obvious under the prior art. In seeking reconsideration of its denial of the patent on obviousness grounds, Plaintiff JRB Company represented that the prior art did not predict the use of a support face.

To secure a patent over the Patent and Trademark Office's objection that the claims were obvious under the prior art, JRB Company first argued that the use of a support face was unique. In its Amendment "A," JRB first argued that its use of a support face distinguished it from the prior art:

"Finally, none of the references teach a load bearing support face on the plate of the female coupler for contacting engagement with the face plates of the male portion. In this type of arrangement, with only point contact, the support of the implement is actually achieved via the pins 16, in contradistinction to the teachings of the prior art."

Still, the Patent and Trademark Office found that Amendment "A"'s use of a support face was not enough to overcome obviousness.

In an Amendment "B" to the application, Plaintiff JRB Company again repeated this argument that the use of a support face on the female coupler, itself, was sufficient to distinguish it from the prior art:

"The prior art fails to teach or suggest two key features of the invention, the contoured face plate of the male master and the independent support surface maintained on the plate of the female coupler portion."

JRB also related that "such a structure is not simply a matter of artisan's choice, but is important for achieving an object of the invention of allowing the weight of the implement to be supported on the pins 16 and not on the face plate 12."

Amendment "B" also said that this use of a load-bearing support face was crucial to the commercial success of the invention: "Such sales have been the result of the

claimed features of the invention and particularly the contoured face plate and the male master and the support face on the female coupler."

The Patent and Trademark Office rejected Plaintiff JRB Company's argument that use of the support face, alone, sufficiently distinguished the female coupler from the prior art.

■ On May 15, 1987, Plaintiff JRB Company offered Amendment "C" to the Patent and Trademark Office in hopes of securing patentability over the objection of obviousness. In Amendment "C," JRB specifically amended claims 1 and 4[4] to place the support face of the female coupler *between* the hook and the eye of that coupler:

> "a support face extending from said plate of said female coupler portion *between said hook and said eye* adapted for making contacting engagement with said contoured face plate when said bridged pin is received by said hook and said extendable pin is received by said eye."

Amendment "C," at 2 (emphasis added).

In Amendment C to claim 4, JRB again explicitly placed the support surface between the hook and the eye:

> "and wherein said plate of said female coupler portion further includes a support surface protruding from said plate *between said hook and said eye* for supporting contacting engagement with said contoured face of said male master portion."

*Id.* (emphasis added).

In the representation supporting Amendment "C," JRB made it clear that the application was being amended to place the support face between the hook and the eye:

> "The claims of the instant application recite two elements: (1) a plate, and (2) a support surface protruding from the plate. Such elements are not shown in

the prior art! Further, *the support surface is specifically defined as protruding between the hook and the eye!*"

*Id.* at 3 (emphasis added).

In both of its prior efforts, Amendments "A" and "B," JRB stressed the importance of the support surface, but did not specify a locale for the support surface. The Patent and Trademark Office rejected both applications. Finally, after Plaintiff JRB Company submitted Amendment "C" to explicitly place the support surface between the hook and the eye, the Patent and Trademark Office issued the '579 patent.

Prosecution history estoppel limits the application of the doctrine of equivalents by excluding from the range of equivalents subject matter that a patentee surrendered during prosecution of the application for the patent. *See Cybor Corp. v. FAS Techs. Inc.*, 138 F.3d 1448, 1459 (Fed.Cir. 1998) (citing *Warner–Jenkinson*, 520 U.S. at 28–30, 117 S.Ct. 1040). "The estoppel may arise from matter surrendered as a result of amendments to overcome patentability rejections ... or as a result of argument to secure allowance of a claim." *Id.* (citing *Wang Lab., Inc. v. Mitsubishi Elecs., Inc.*, 103 F.3d 1571, 1578 (Fed.Cir. 1997)).

Having specifically moved the location of the support face to a position between the hook and the eye to secure a patent over the objection of obviousness, Plaintiff JRB Company is estopped from arguing that Defendant Pembertons' use of a support face not between the hook and eye is equivalent. Therefore, Pemberton did not infringe the '579 patent.

■ Plaintiff JRB Company also brings a claim against Defendant Pemberton for inducement to infringe. However, where there is no direct infringement, a claim for inducement to infringe cannot stand. *See Carborundum Co. v. Molten Metal Equipment Innovations, Inc.*, 72

---

4. Claim 4 was originally denominated as claim 9.

F.3d 872, 876 n. 4 (Fed.Cir.1995) (citing *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed.Cir.1986)); *see also Sage Prods., Inc. v. Devon Indus., Inc.*, 45 F.3d 1575, 1577 (Fed.Cir.1995); *Enpat, Inc. v. Microsoft Corp.*, 6 F.Supp.2d 537, 537 (E.D.Va.1998) (citing *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed.Cir.1993)). Therefore, JRB's claim for inducement to infringe must fail.

Because Plaintiff JRB Company's claims for infringement and inducement to infringe fail, its claim for injunctive relief and an accounting must similarly fail. The Court therefore grants Defendant Pemberton's motion on all claims.[5]

## V. CONCLUSION

For the reasons stated herein, the Court grants Defendant Pemberton's motion for summary judgment on all claims. This action is hereby terminated pursuant to Rule 58 of the Federal Rules.

IT IS SO ORDERED.

---

**5.** Defendant Pemberton's motion also raises the issue of the invalidity of JRB's patent. The Court need not address this argument, as the issue is raised only as an affirmative defense and not a counterclaim. Similarly, the Court need not address Pemberton's argument that the plaintiff is barred by laches. Such an argument is moot in light of the Court's finding that there was no infringement.