IMAGEXPO, L.L.C., Plaintiff,

v.

MICROSOFT CORPORATION, Defendant.

No. CIV.A. 3:02CV751.

United States District Court, E.D. Virginia. Richmond Division.

Aug. 19, 2003.

Howard W. Dobbins, Esq., Robert Dean Perrow, Williams, Mullen PC, Richmond, VA, Coke Morgan Stewart, Alan Michael Fisch, Kelly Ambrose Clement, Jason Foster Hoffman, Howrey, Simon, Arnold & White LLP, John H. Weber, Baker & Hostetler LLP, Washington, DC, for Plaintiff.

James Crawford Roberts, Alan Durrum Wingfield, Henry Dwight Williams Burt, Troutman Sanders LLP, Richmond, VA, Michael L. Buckler, Garth A. Winn, Michael Norman Zachary, J. Christopher Carraway, Klarquist Sparkman LLP, Portland, OR, Isabella E. Fu, Redmond, WA, for Defendant.

### MEMORANDUM OPINION

(Microsoft's Motion in Limine to Bar Imagexpo From Seeking Damages on Units of NetMeeting Made Outside the United States and Microsoft's Motion for Partial Summary Judgment to Limit Damages for Failure to Mark Pursuant to 35 U.S.C. § 287)

HUDSON, District Judge.

This matter is before the Court on two motions: Microsoft's Motion in Limine to Bar Imagexpo from Seeking Damages on Units of NetMeeting Made Outside the United States and Microsoft's Motion for Partial Summary Judgment to Limit Damages for Failure to Mark Pursuant to 35 U.S.C. § 287. Both parties have submitted detailed memoranda with accompanying exhibits. All factual and legal issues are fully developed; therefore, it is the Court's opinion that oral argument would not aid in the decisional process.

### I. Microsoft's Motion in Limine to Bar Imagexpo From Seeking Damages on Units of NetMeeting Made Outside the United States

Initially, Plaintiff Imagexpo, L.L.C. ("Imagexpo") points out that this matter is improperly styled as a motion *in limine* because it urges the Court to exclude a theory of damages and not a specific category of evidence. Imagexpo's point is well-taken. In the interest of time and efficiency, however, the Court will proceed to address the motion as framed.

▄ Defendant Microsoft Corporation's ("Microsoft's") motion is predicated on the settled principle that United States patents do not have extraterritorial effect. 35 U.S.C. § 271 ("§ 271"). In most instances, neither the manufacture of a product abroad nor its sale abroad constitutes an actionable infringement. See *Deepsouth Packing Co. v. Laitram*, 406 U.S. 518, 527–29, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972). However, 35 U.S.C. § 271(f) prevents infringers from escaping both liability and damages under U.S. patent law by making a component domestically and exporting it for combination into infringing articles overseas. Imagexpo contends that Microsoft is engaging in this very practice by exporting its infringing NetMeeting software code.

According to Imagexpo, Microsoft develops the NetMeeting computer code within the United States. The code is then exported overseas on "golden master" discs "for the express purpose of combining the

code with other components (namely CD–ROMs and computers) to form apparatuses that infringe the patent-in-suit." (Pl.'s Brief in Opp. filed June 13, 2003 at 1.) The NetMeeting software code that is incorporated into the infringing apparatus constitutes an exact copy of what is on the "golden master." Additionally, the code itself is a patentable apparatus. *Diamond v. Diehr*, 450 U.S. 175, 188–193, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981) (claim containing a mathematical formula, equation, algorithm, or the like satisfies the requirement of 35 U.S.C. § 101 if implemented or applied in a structure process that, when considered as a whole, is performing a function which the patent laws were designed to protect). *See also, In re Alappat,* 33 F.3d 1526, 1543–44 (Fed.Cir.1994).

Microsoft denies that it is liable under 35 U.S.C. § 271(f) for indirect infringement. That statute describes two ways in which a manufacturer can be held liable for inducing or contributing to infringement. First, a manufacturer can be held liable when it exports all or a substantial portion of the components of a patented invention for assembly and distribution overseas. 35 U.S.C. § 271(f)(1). Second, a manufacturer risks liability by exporting any component of a patented invention that is either specially made or specially adapted for use in the invention but is not a staple article or commodity of commerce suitable for substantial, noninfringing use. 35 U.S.C. § 271(f)(2).

Microsoft asserts that under either facet of the statute, liability may only be imposed upon those who supply or cause to be supplied a "component" of an infringing device. Microsoft further maintains that the term "component" denotes a tangible, physical element of a patented device, commonly associated with an apparatus claim. As its authority for this limitation on liability, Microsoft relies on *Enpat, Inc.*

*v. Microsoft Corp.,* 6 F.Supp.2d 537, 539 (E.D.Va.1998) (finding that even though a patented process involves the use of physical objects, this alone is not enough to bring a method patent within the purview of § 271(f)). According to *Enpat,* Microsoft argues, its exported software code is a template, similar to a design, instruction, or recipe. Thus, it merely exports the template itself and not some tangible, physical object that is otherwise incorporated into an accused overseas apparatus.

As explained by Microsoft, Microsoft Corporation furnishes master versions, or "golden masters," of the NetMeeting software to authorized, overseas replicators. The "golden masters," which contain electronic transmission codes, serve as templates from which units of software can be created and then installed on the hard drives of newly-manufactured PCs. Microsoft does not supply end users with the "golden master" itself, nor are "golden masters" incorporated into the finished product. Instead, in some instances, English versions of either the "golden masters" or the electronic transmission codes are sent to overseas contractors for translation into foreign languages. The translated versions are then used as templates to produce NetMeeting software. Similarly, Microsoft maintains overseas computer servers from which end users themselves can download NetMeeting.

Again, Microsoft contends that each template is nothing more than a plan, design, or concept. The template itself is not a tangible item that physically becomes a constituent part of a protected apparatus. It is Microsoft's position that the "golden master," or template, is analogous to the shoe sole design patent that was found to be outside the scope of 35 U.S.C. § 271 in *Aerogroup Int'l. v. Marlboro Footworks, Ltd.,* 955 F.Supp. 220 (S.D.N.Y.1997). In *Aerogroup,* the court found that the design

patent in question had no component parts and, consequently, was not covered under § 271. *Id.* at 232.

Imagexpo counters that under § 271 there is no legal basis for Microsoft's attempt to engraft a tangibility requirement into the definition of "component." Moreover, Imagexpo contends, Microsoft's reliance on *Enpat* is misplaced.

In *Enpat,* the plaintiff alleged that two Microsoft products, Microsoft Project and Microsoft Team Manager, either contributorily infringed or actively induced the infringement of plaintiff's patent. *Enpat,* 6 F.Supp.2d at 537. As in the immediate case, in *Enpat,* Microsoft argued that § 271(f) applies only to the assembly of patented products abroad and does not apply to method patents, which have no components. *Id.* at 538. The patent in suit in *Enpat* described the steps required to accomplish a particular task, rather than the composition of a patented, physical product. In its opinion, the Court likened the *Enpat* patent to the asphalt-making process in *Standard Havens Prod., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1374 (Fed.Cir.1991) and the shoe design in *Aerogroup,* 955 F.Supp. at 231, neither of which was found to be within the purview of § 271(f) since neither had components. *Enpat,* 6 F.Supp.2d at 539.

■ Here, Imagexpo distinguishes the patent-in-suit from those considered by the courts in *Standard Havens, Aerogroup,* and *Enpat.* Imagexpo's position is that the "golden master," or template, at issue in this case actually involves an information- or code-base which becomes an integral ingredient in the finished computer product. In other words, the overseas replicator does not simply construct the computer product using a plan, design, or recipe supplied by Microsoft. Instead, the functional nucleus of the finished computer product is driven by the code, which is transmitted through the "golden master." Simply put, according to Imagexpo, Microsoft's role in the production process is active rather than passive. The template is, therefore, a component.

The Court is of the opinion that the "golden master" and the electronic codes supplied by Microsoft to its overseas representatives constitute "components" under 35 U.S.C. § 271(f). Consequently, Microsoft's Motion in Limine to Bar Imagexpo From Seeking Damages on Units of NetMeeting Made Outside the United States is DENIED.

II. *Microsoft's Motion for Partial Summary Judgment to Limit Damages for Failure of Plaintiff to Mark Pursuant to 35 U.S.C. § 287*

■ As a prerequisite to collecting damages for infringement, 35 U.S.C. § 287(a) (" § 287(a)") requires a patent holder to give the infringing party legally sufficient notice of the patent. Typically, this takes one of two forms: constructive notice by marking or actual notice by direct, particularized communication, such as a specific letter or lawsuit. *See, e.g., Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111–12 *(Fed. Cir.1996).* With respect to constructive notice, the Federal Circuit has construed § 287(a) to require that "once marking has begun, it must be substantially consistent and continuous in order for a party to avail itself of this statutory notice provision." *Id.* at 1111 (citation omitted). Ordinarily, compliance with the marking statute is a question of fact. *Id.*

With respect to actual notice, the issue of marking is properly decided upon summary judgment when no reasonable jury could find that the patentee has or has not provided actual notice to the "particular defendants by informing them of his patent and of their infringement of it." *Am-*

sted Indus. Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 186–87 (Fed.Cir.1994) (quoting Dunlap v. Schofield, 152 U.S. 244, 247–48, 14 S.Ct. 576, 38 L.Ed. 426 (1894)). On the other hand, the standard governing summary judgment in constructive notice cases is more difficult to apply, because it requires proof of "substantively consistent and continuous" marking. Unfortunately, this standard does not have well-marked boundaries.

In the immediate case, Microsoft contends that Imagexpo and its predecessor in interest, Group Logic, failed to comply with the marking requirement. For that reason, Microsoft seeks to limit Plaintiff's damages to those accruing after October 15, 2002, the date on which this lawsuit was filed. In response to Microsoft's motion, Imagexpo has advanced evidence enabling a good faith argument that approximately eighty-five percent (85%) of the products incorporating the patented technology were properly marked. According to Imagexpo, some embodiments were marked one hundred percent (100%) of the time. Imagexpo's proffered evidence consists of a combination of sales revenue analyses, corporate policy and practice, and personal observations of employees.

Microsoft counters that even when taken it its best light, Imagexpo fails, as a matter of law, to demonstrate compliance. In Microsoft's view, Imagexpo's evidence is neither credible nor reliable. To achieve compliance, Microsoft argues, Imagexpo must show that the patentee "consistently marked substantially all" of the patented products. See Nike, Inc. v. Wal–Mart Stores, Inc., 138 F.3d 1437, 1446 (Fed.Cir. 1998) (citation omitted). However, no judicial consensus seems to have emerged as to the definition of "substantially all" Whether Group Logic consistently marked "substantially all" of the patented products and whether the evidence is credible and reliable, appear to be classic issues for resolution by the trier of fact.

As a secondary argument, Microsoft maintains that Group Logic cannot meet its burden of showing compliance with 35 U.S.C. § 281(a), because it failed to take reasonable efforts to ensure that its licensees marked the patented product. Imagexpo disputes that any such legal requirement exists and points out that Microsoft has failed to identify any evidence of distribution of unmarked product by licensees. This, obviously, remains a disputed issue of fact.

In the final analysis, the Court is of the opinion that genuine issues of material fact exist with respect to compliance with 35 U.S.C. § 281(a) that preclude an award of partial summary judgment. Microsoft's Motion for Partial Summary Judgment to Limit Damages for Failure of Plaintiff to Mark Pursuant to 35 U.S.C. § 287 is, therefore, DENIED.